

# Employee Introductions
5 messages

---

**Mark Cohen** <mark.cohen@generalhealthgroup.com>   Tue, Jan 31, 2023 at 3:47 PM
To: Wendy Smith <wendy.smith@generalhealthgroup.com>, Brenda Lopez <bwaddy16@gmail.com>
Cc: Mark Cohen <mark.cohen@generalhealthgroup.com>
Bcc: Michel <michelneret@usa.net>

Hi Brenda,

I greatly appreciate the informative chat yesterday.

I would like to introduce Wendy, our HR head of all the locations. She has been with the company since day 1 and has a tremendous amount of experience in small and large companies across the country.

Linkedin; Wendy Smith - Founder - Metamorphosis Solutions, LLC | LinkedIn

Wendy, Brenda is the office manager of the two of the newest acquisitions that have been recently done by GHG and Neret Medical. The office numbers are (979) 244-2007 and (979) 417-2244.

Please let me know when you both connect and set up times to talk to the employees;



**Mark Cohen**
Operations & Strategy Director
GeneralHealth Group Inc

---

917-789-5058

mark.cohen@generalhealthgroup.com

www.generalhealthgroup.com

244 5th Ave, New York, NY 10001, United States

 Sender notified by
Mailtrack

---

**Brenda Waddy** <bwaddy16@gmail.com>   Wed, Feb 1, 2023 at 12:11 AM
To: Mark Cohen <mark.cohen@generalhealthgroup.com>
Cc: Wendy Smith <wendy.smith@generalhealthgroup.com>

Hello,

I look forward to working with you all.

Wendy, just let me know when you would like to connect and get the employees set up.  You may also call or text my cell phone, in case I am not at my desk.  I look forwarding to speaking with you.  This is my cell phone number 979-557-9281.

Thank you,

# Brenda Waddy
Office Manager



[1809 Merlin Street](#)     [54 Flag Lake Plaza](#)

[Bay City, TX 77414 Lake Jackson, TX](#) 77566

979-244-2007
979-244-1991 Fax
[www.neretmedical.com](http://www.neretmedical.com)

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error, please notify the system manager. Please note that any views or opinions presented in this email are solely those of the author and do not necessarily represent those of the organization. Finally, the recipient should check this email and any attachments for the presence of viruses. The organization accepts no liability for any damage caused by any virus transmitted by this email.

[Quoted text hidden]

---

**Brenda Waddy** <bwaddy16@gmail.com>　　　　　　　　　　　　　　　　　　　Wed, Feb 1, 2023 at 1:29 AM
To: Mark Cohen <mark.cohen@generalhealthgroup.com>
Cc: Wendy Smith <wendy.smith@generalhealthgroup.com>

I have attached all employees, providers and janitorial contact information to this email.  If there is anything else you may need please let me know.

Thank you,
# Brenda Waddy
Office Manager

1809 Merlin Street  54 Flag Lake Plaza

Bay City, TX 77414     Lake Jackson, TX 77566

979-244-2007
979-244-1991 Fax
[www.neretmedical.com](http://www.neretmedical.com)

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error, please notify the system manager. Please note that any views or opinions presented in this email are solely those of the author and do not necessarily represent those of the organization. Finally, the recipient should check this email and any attachments for the presence of viruses. The organization accepts no liability for any damage caused by any virus transmitted by this email.

> On Jan 31, 2023, at 2:47 PM, Mark Cohen <[mark.cohen@generalhealthgroup.com](mailto:mark.cohen@generalhealthgroup.com)> wrote:
>
> Hi Brenda,

I greatly appreciate the informative chat yesterday.

I would like to introduce Wendy, our HR head of all the locations. She has been with the company since day 1 and has a tremendous amount of experience in small and large companies across the country.

Linkedin; Wendy Smith - Founder - Metamorphosis Solutions, LLC | LinkedIn

Wendy, Brenda is the office manager of the two of the newest acquisitions that have been recently done by GHG and Neret Medical. The office numbers are (979) 244-2007 and (979) 417-2244.

Please let me know when you both connect and set up times to talk to the employees;



### Mark Cohen
Operations & Strategy Director
GeneralHealth Group Inc

917-789-5058

mark.cohen@generalhealthgroup.com

www.generalhealthgroup.com

244 5th Ave, New York, NY 10001, United States

Sender notified by
Mailtrack

**2 attachments**


uc.jpeg
8K

NeretFamilyPractice_EmployeeDirectory.numbers
764K

---

**Wendy Smith** <wendy.smith@generalhealthgroup.com>  Wed, Feb 1, 2023 at 9:53 PM
To: Brenda Waddy <bwaddy16@gmail.com>
Cc: Mark Cohen <mark.cohen@generalhealthgroup.com>

Hi Brenda,

My apologies for my delayed response. I look forward to connecting with you as well.

I can call your cell tomorrow so we can figure out the best times to meet with your team.

Thanks!
Wendy

[Quoted text hidden]



**Wendy Smith**
Human Resources Leader
GeneralHealth Group, Inc.

(937) 216-3914
wendy@generalhealthgroup.com
generalhealthgroup.com
244 5th Ave, New York, NY 10001

---

**Brenda Waddy** <bwaddy16@gmail.com>  Wed, Feb 1, 2023 at 10:57 PM
To: Wendy Smith <wendy.smith@generalhealthgroup.com>
Cc: Mark Cohen <mark.cohen@generalhealthgroup.com>

Hi Wendy,

Are you available for the call in the morning at 10:30 am?

Thank you,
Brenda Waddy
Office Manager



1809 Merlin Street          54 Flag Lake Plaza

Bay City, TX 77414  Lake Jackson, TX 77566

979-244-2007
979-244-1991 Fax
www.neretmedical.com

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error, please notify the system manager. Please note that any views or opinions presented in this email are solely those of the author and do not necessarily represent those of the organization. Finally, the recipient should check this email and any attachments for the presence of viruses. The organization accepts no liability for any damage caused by any virus transmitted by this email.

> On Feb 1, 2023, at 8:53 PM, Wendy Smith <wendy.smith@generalhealthgroup.com> wrote:
>
> Hi Brenda,
>
> My apologies for my delayed response. I look forward to connecting with you as well.
>
> I can call your cell tomorrow so we can figure out the best times to meet with your team.
>
> Thanks!
> Wendy
>
> On Wed, Feb 1, 2023 at 12:11 AM Brenda Waddy <bwaddy16@gmail.com> wrote:
>> Hello,
>>
>> I look forward to working with you all.
>>
>> Wendy, just let me know when you would like to connect and get the employees set up.  You may also call or text my cell phone, in case I am not at my desk.  I look forwarding to speaking with you.  This is my

cell phone number 979-557-9281.

Thank you,
Brenda Waddy
Office Manager

[Quoted text hidden]
[Quoted text hidden]
[Quoted text hidden]

DocuSign Envelope ID: E2E6AC8F-F22F-4D89-BF90-7FBBCAF7638C

# ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (this "***Agreement***"), dated as of [ 1/29/2023 ], is entered into by and between Neret Family Practice, a Texas professional corporation ("***Seller***"), and GeneralHealth Group Inc., a Florida corporation ("***Buyer***").

## RECITALS

WHEREAS, Seller is engaged in the business of family medicine and cosmetics related services (the "***Business***");

WHEREAS, Seller wishes to sell and assign to Buyer, and Buyer wishes to purchase and assume from Seller, certain of the assets, and certain specified liabilities, of the Business, subject to the terms and conditions set forth herein; and

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I
## DEFINITIONS

The following terms have the meanings specified or referred to in this ARTICLE I:

"***Action***" means any claim, action, cause of action, demand, lawsuit, arbitration, inquiry, audit, notice of violation, proceeding, litigation, citation, summons, subpoena or investigation of any nature, civil, criminal, administrative, regulatory or otherwise, whether at law or in equity.

"***Affiliate***" of a Person means any other Person that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Person. The term "control" (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise.

"***Ancillary Documents***" means the Bill of Sale, the Assignment and Assumption Agreement, Assignment and Assumption of Contracts, the Promissory Note, the Security Agreement and any other ancillary documents contemplated hereunder.

"***Assigned Contracts***" has the meaning set forth in Section 2.01(c).

"***Assignment and Assumption Agreement***" has the meaning set forth in Section 3.02(a)(ii).

"***Assumed Liabilities***" means those Liabilities set forth in Section 1.01 of the Disclosure Schedule, all of which Buyer hereby agrees to accept and fully assume.

"***Business Day***" means any day except Saturday, Sunday or any other day on which commercial banks located in Wilmington, Delaware are authorized or required by Law to be closed for business.

"***Code***" means the Internal Revenue Code of 1986, as amended.

"*Contracts*" means all contracts, leases, deeds, mortgages, licenses, instruments, notes, commitments, undertakings, indentures, joint ventures and all other agreements, commitments and legally binding arrangements, whether written or oral.

"*Disclosure Schedules*" means the Disclosure Schedules delivered by Seller and Buyer concurrently with the execution and delivery of this Agreement.

"*Dollars or $*" means the lawful currency of the United States.

"*EBITDA*" shall mean earnings before interest, taxes, depreciation and amortization calculated in a manner consistent with past practice when the Business was conducted by Seller.

"*Encumbrance*" means any charge, claim, community property interest, pledge, condition, equitable interest, lien (statutory or other), option, security interest, mortgage, easement, encroachment, right of way, right of first refusal, or restriction of any kind, including any restriction on use, voting, transfer, receipt of income or exercise of any other attribute of ownership.

"*Knowledge of Seller or Seller's Knowledge*" or any other similar knowledge qualification, means the actual knowledge of any director or officer of Seller.

"*Law*" means any statute, law, ordinance, regulation, rule, code, order, constitution, treaty, common law, judgment, decree, other requirement or rule of law of any Governmental Authority.

"*Liabilities*" means liabilities, obligations or commitments of any nature whatsoever, asserted or unasserted, known or unknown, absolute or contingent, accrued or unaccrued, matured or unmatured or otherwise.

"*Permits*" means all permits, licenses, franchises, approvals, authorizations, registrations, certificates, variances and similar rights obtained, or required to be obtained, from Governmental Authorities.

"*Person*" means an individual, corporation, partnership, joint venture, limited liability company, Governmental Authority, unincorporated organization, trust, association or other entity.

"*Seller Principals*" has the meaning set forth in Section 2.08.

## ARTICLE II
## PURCHASE AND SALE

**Section 2.01    Purchase and Sale of Assets.** Subject to the terms and conditions set forth herein, at the Closing, Seller shall sell, assign, transfer, convey and deliver to Buyer, and Buyer shall purchase from Seller, free and clear of any Encumbrances other than permitted Encumbrances, all of Seller's right, title and interest in, to and under the following assets, properties and rights, which relate to, or are used or held for use in connection with, the Business (but specifically excluding the Excluded Assets as defined below (the "*Excluded Assets*")) (collectively, the "*Purchased Assets*"):

(a)    all bank accounts;

(b)    all inventory and supplies used in connection with the Business ("*Inventory*");

DocuSign Envelope ID: E2E6AC8F-F22F-4D89-BF90-7FBBCAF7638C

(c) all Contracts set forth on Section 2.01(c) of the Disclosure Schedules (the "**Assigned Contracts**");

(d) all furniture, fixtures, equipment, machinery, tools, vehicles, office equipment, supplies, computers, telephones and other tangible personal property, except for those items included in the Excluded Assets (the "**Tangible Personal Property**")

(e) all Permits, to the extent assignable to Buyer; and

(f) copies of all books and records, including, but not limited to, books of account, ledgers and general, financial and accounting records, machinery and equipment maintenance files, customer lists, customer purchasing histories, price lists, distribution lists, supplier lists, production data, quality control records and procedures, customer complaints and inquiry files, records and data (including all correspondence with any governmental authority), sales material and records (including pricing history, total sales, terms and conditions of sale, sales and pricing policies and practices), internal financial statements, marketing and promotional surveys, and files to the extent contained in the files turned over or otherwise provided to the Buyer during due diligence ("**Books and Records**").

**Section 2.02    Excluded Assets.** Notwithstanding the foregoing, the Purchased Assets shall not include any of the assets set forth in Section 2.02 of the Disclosure Schedule (the "***Excluded Assets***"). It is agreed by both Parties than other than the assets attached in the **Excluded Assets** list, all other Assets at 54 Flag Lake Plaza, Lake Jackson, TX and 1809 Merlin St, Bay City, TX are part of the **Purchased Assets.**

**Section 2.03    Purchase Price;** The aggregate purchase price for the Purchased Assets shall be **$7,000,000** plus the assumption of the Assumed Liabilities. The Purchase Price shall be paid as follows:

(a) Payment Date. The purchase price shall be paid as follows: (i) 36 monthly installments with a debt service coverage ratio of 1.42 [ **(monthly EBITDA calculated), divided by 1.42 equals (the Payment to be made)**] with the first payment to be made on the 30th day following the Closing Date (the "**First Payment Date**") and each of the remaining 35 payments on thirtieth succeeding day, and (ii) remainder of agreed upon purchase price due on the third anniversary (37th month) of the First Payment Date.

(b) Interest Rate; Interest Rates vary (from 1.5% – 5%) and must be confirmed by routine checks on a monthly basis on the IRS database

**Section 2.04    Allocation of Purchase Price.** Seller and Buyer agree that the Purchase Price and the Assumed Liabilities (plus other relevant items) shall be allocated among the Purchased Assets for all purposes (including Tax and financial accounting) as shown on the allocation schedule (the "***Allocation Schedule***") set forth on Section 2.04 of the Disclosure Schedules.

**Section 2.05    Employees.**  Effective as of the Closing Date, the Seller shall terminate the employment of all of its employees.  Buyer may make an offer of employment to the employees terminated by Seller.  With respect to employees who have accepted Buyer's offer of employment ("***Transferred Employees***"), Seller shall pay, discharge and be responsible for all liabilities and payment obligations in respect of or relating to its employees for periods ending on or before the Closing Date and

all liabilities and obligations with respect to the Transferred Employees for periods beginning on or after the Closing Date shall be liabilities and obligations of the Buyer (and not the Seller).

Section 2.06    **Post-Closing Operation of Business**.  Buyer warrants and covenants, which warranty and covenant shall survive the Closing Date so long as any amounts remain due and owing under the Promissory Note, that (a) Buyer shall use its best efforts to operate the Business in such a manner as to maximize EBITDA to repay Seller as quickly as possible, and (b) Buyer shall not take any action with a goal of shifting assets, income, activities or opportunities of the Business to other businesses or entities and shall affirmatively take those actions reasonably necessary or desirable to maximize the income of the Business.

Section 2.07    **Post-Closing Information Rights and Reports.**  At any time when any balance under the Promissory Note remains due and owing, Seller and the Seller Principals shall have full access to all of the books and records of the Buyer, including, without limitation, all financial and client information relating to the Business.

# ARTICLE III
# CLOSING

Section 3.01    **Closing.** Subject to the terms and conditions of this Agreement, the consummation of the transactions contemplated by this Agreement (the "***Closing***") shall take place by exchange of documents and signatures (or their electronic counterparts), at [any] time, date or place as Seller and Buyer may mutually agree upon in writing. The date on which the Closing is to occur is herein referred to as the "***Closing Date***".

Section 3.02    **Closing Deliverables.**

(a)    At the Closing, Seller shall deliver to Buyer the following:

(i)    a bill of sale in the form of Exhibit E hereto (the "***Bill of Sale***") and duly executed by Seller, transferring the tangible personal property included in the Purchased Assets to Buyer; and

(ii)    an assignment and assumption agreement in the form of Exhibit F hereto (the "***Assignment and Assumption Agreement***") and duly executed by Seller, effecting the assignment to and assumption by Buyer of the Purchased Assets and the Assumed Liabilities;

(b)    At the Closing, Buyer shall deliver to Seller the following:

(i)    with respect to each Contract, an Assignment and Assumption of Contract duly executed by Buyer;

(ii)    the Promissory Note, duly executed by Buyer and/or the applicable parties to such agreements.

# ARTICLE IV
# REPRESENTATIONS AND WARRANTIES OF SELLER

Except as set forth in the correspondingly numbered Section of the Disclosure Schedules, Seller represents and warrants to Buyer that the statements contained in this ARTICLE IV are true and correct as of the date hereof.

**Section 4.01    Organization and Qualification of Seller.** Seller is a professional corporation duly organized, validly existing and in good standing under the Laws of the State of Texas and has full corporate power and authority to own, operate or lease the properties and assets now owned, operated or leased by it and to carry on the Business as currently conducted.

**Section 4.02    Authority of Seller.** Seller has full corporate power and authority to enter into this Agreement and the Ancillary Documents to which Seller is a party, to carry out its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby.

**Section 4.03    Undisclosed Liabilities.** Seller has no Liabilities with respect to the Business, except (a) those which are adequately reflected or reserved against in the balance sheet of the Seller previously provided to Buyer as of such balance sheet date, and (b) those which have been incurred in the ordinary course of business consistent with past practice since such balance sheet date and which are not, individually or in the aggregate, material in amount.

**Section 4.04    Title to Purchased Assets.** Seller has good and valid title to, or a valid leasehold interest in, all of the Purchased Assets. All such Purchased Assets (including leasehold interests) are free and clear of Encumbrances.

**Section 4.05    Inventory.** All Inventory, whether or not reflected in the Balance Sheet, consists of a quality and quantity usable in the ordinary course of business consistent with past practice. All Inventory is owned by Seller free and clear of all Encumbrances. The quantities of each item of Inventory are not excessive, but are reasonable in the present circumstances of Seller.

**Section 4.06    Employment Matters.**  Section 4.06 of the Disclosure Schedules contains a list of all persons who are employees, independent contractors or consultants of the Business as of the date hereof, including any employee who is on a leave of absence of any nature, paid or unpaid, authorized or unauthorized.

**Section 4.07    Full Disclosure.** No representation or warranty by Seller in this Agreement and no statement contained in the Disclosure Schedules to this Agreement or any certificate or other document furnished or to be furnished to Buyer pursuant to this Agreement contains any untrue statement of a material fact, or omits to state a material fact necessary to make the statements contained therein, in light of the circumstances in which they are made, not misleading.

<div style="text-align:center">

**ARTICLE V**
**REPRESENTATIONS AND WARRANTIES OF BUYER**

</div>

Except as set forth in the correspondingly numbered Section of the Disclosure Schedules, Buyer represents and warrants to Seller that the statements contained in this ARTICLE V are true and correct as of the date hereof.

**Section 5.01    Organization of Buyer.** Buyer is a corporation duly organized, validly existing and in good standing under the Laws of the State of Florida.

**Section 5.02    Authority of Buyer.** Buyer has full corporate power and authority to enter into this Agreement and the Ancillary Documents to which Buyer is a party, to carry out its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby.

**Section 5.03    Brokers.**  No broker, finder, investment banker or other person is entitled to any brokerage fee, finders' fee or other similar fee or commission, or the reimbursement of expenses, in connection with the transactions contemplated by this Agreement based upon arrangements made by or on behalf of Buyer or any of its Affiliates.

## ARTICLE VI
## ADDITIONAL AGREEMENTS

**Section 6.01    Non-Competition.** For a period of 1 year commencing on the Closing Date (the "*Restricted Period*"), Seller shall not, and shall not permit any of its Affiliates to, directly or indirectly, (i) engage in or assist others in engaging in the Restricted Business in the Territory; or (ii) have an interest in any Person that engages directly or indirectly in the Restricted Business in the Territory in any capacity, including as a partner, shareholder, member, employee, principal, agent, trustee or consultant. Notwithstanding the foregoing, Seller and its Affiliates shall not be prohibited from working with Janna Daniels and shall be permitted to work with, and provide services to, Sebastian Romero, Greyson Reynolds, and Liam Mulcahy.  For purposes of this Section, "*Restricted Business*" shall mean the provision of pediatric occupational and speech therapy services to the public, and "*Territory*" shall mean Salt Lake County, Texas.

**Section 6.02    HIPAA.**  Buyer and Seller agree to comply with the Health Insurance Portability and Accountability Act of 1996, P. L. 104-191, and its implementing rules and regulations in consummating the transactions contemplated hereunder.

**Section 6.03    Further Assurances.**  Buyer and Seller shall cooperate in good faith with the other and shall take all appropriate action and execute any documents, instruments, assignments, assumptions or conveyances of any kind which may reasonably be necessary or advisable to carry out any of the transactions contemplated hereunder.  The parties shall cooperate in providing such information as may be necessary to be in compliance with relevant sections of the Code.

**Section 6.04    Confidentiality.**  Each party shall use all information that it obtains from the other pursuant to this Agreement (the "*Confidential Information*") solely for the effectuation of the transactions contemplated by this Agreement or for other purposes consistent with the intent of this Agreement and shall not use any of such information for any other purpose, including, without limitation, the competitive detriment of the other parties.  Each party may disclose Confidential Information to its respective affiliates, counsel, accountants, tax advisors and consultants as necessary to consummate this transaction.  Additionally, the parties hereby agree that neither party shall make any announcement or press release regarding the nature or existence of this Agreement without the consent of the other party.  This provision shall not prohibit the use or disclosure of Confidential Information pursuant to court order or which has otherwise become publicly available through no fault of the recipient party.

**Section 6.05    Return of Information.**  Each party agrees that upon request of the other party, it shall promptly deliver to the other party all Confidential Information that is not otherwise included in the Purchased Assets, including any copies, compilations, and extracts thereof, in such party's possession or in the possession of its agents, without retaining any copies thereof (including on hard disk, or any other electronic, magnetic, or digital medium) or certify in writing to the destruction thereof.

DocuSign Envelope ID: E2E6AC8F-F22F-4D89-BF90-7FBBCAF7638C

Notwithstanding the return or destruction of the Confidential Information, each party will continue to be bound by the terms and conditions of this Agreement unless otherwise set forth herein.

## ARTICLE VII
## MISCELLANEOUS

**Section 7.01    Notices.** All notices, requests, consents, claims, demands, waivers and other communications hereunder shall be in writing and shall be deemed to have been given (a) when delivered by hand (with written confirmation of receipt); (b) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); or (c) on the date sent by facsimile or e-mail of a PDF document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next Business Day if sent after normal business hours of the recipient. Such communications must be sent to the respective parties at the following addresses (or at such other address for a party as shall be specified in a notice given in accordance with this Section 7.01.

If to Seller:

>Neret Family Practice
>(979) 240-5238
>Facsimile:     [FAX NUMBER]
>E-mail: michelneret@usa.net
>Attention:     Michel Neret

If to Buyer:

>GeneralHealthGroup Inc
>244 5th Ave, L270
>New York, NY 10001
>Attn:  David McNichols, Chairman
>**OR**
>Legal Team at ArentFox Schiff

**Section 7.02    Governing Law; Venue; Enforcement.**

(a)    This Agreement shall be governed by and construed in accordance with the internal laws of the State of Texas without giving effect to any choice or conflict of law provision or rule (whether of the State of Texas or any other jurisdiction).

(b)    In the event of a dispute between the parties arising under this Agreement, the party prevailing in such dispute shall be entitled to collect such party's costs from the other party, including without limitation court costs and reasonable attorneys' fees, whether such sums are expended with or without suit, at trial or on appeal.

**Section 7.03    Expenses.**  Except as otherwise expressly provided herein, all costs and expenses, including, without limitation, fees and disbursements of counsel, financial advisors and accountants, incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by the party incurring such costs and expenses, whether or not the Closing shall have occurred.

**Section 7.04    Entire Agreement; Amendments.**  This Agreement and the exhibits attached hereto constitute the entire agreement between the parties hereto with respect to the subject matter contained herein, and there are no covenants, terms or conditions, express or implied, other than as set forth or referred to herein.  This Agreement supersedes all prior agreements between the parties hereto

DocuSign Envelope ID: E2E6AC8F-F22F-4D89-BF90-7FBBCAF7638C

relating to all or part of the subject matter herein.  No representations, oral or written, modifying or contradicting the terms of this Agreement have been made by any party except as contained herein.  This Agreement may not be amended, modified or canceled except as provided herein or by written agreement of the parties signed by the party against whom enforcement is sought.

**Section 7.05** **Assignment***.*  Without the prior written consent of the other party, the benefits of this Agreement may not be assigned or in any other manner transferred and the obligations may not be delegated.  Subject to the foregoing limitation on assignment and delegation, this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective legal representatives, successors and assigns, and no other person shall have any right, benefit or obligation hereunder.

**Section 7.06** **Counterparts***.*  Any number of counterparts of this Agreement may be signed and delivered and each shall be considered an original and together they shall constitute one agreement.

*(Remainder of this page intentionally left blank; signatures begin on the next page.)*

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

**Neret Family Practice**

By: *(signed)* Michel Neret

Name: Michel Neret

Title: Officer

**GeneralHealth Group Inc.**

By: *(signed)* Ruth Berenstein

Name: Ruth Berenstein

Title: Managing Director



# Re: Introduction: GeneralHealth Group
9 messages

**Michel** &lt;michelneret@usa.net&gt;                                                                        Wed, Sep 14, 2022 at 2:18 AM
To: Mark Cohen &lt;mark.cohen@generalhealthgroup.com&gt;

> Hello Mark, I would be willing to listen
>
> Michael G Neret MD
> michelneret@usa.net
>
>
>> On Sep 12, 2022, at 7:46 PM, Mark Cohen <mark.cohen@generalhealthgroup.com> wrote:
>>
>> Hi Michael,
>>
>> I hope you are doing well.
>>
>> My name is Mark Cohen and I'm the Operations Director here at **GeneralHealth Group Inc**.
>>
>> **Michael G Neret Md** fits our ideal profile for businesses we are interested in acquiring.
>>
>> GeneralHealth Group Inc. is the leader in the consolidation in the healthcare, pharma, and insurance industry.
>>
>> We are NOT brokers or advisors.
>>
>> With 200 years of industry experience and $150BN+ worth of transactions, we are working tirelessly to create better systems in the very fragmented sectors of the healthcare & pharmaceutical industries.
>>
>> Our direct partners are:
>>
>> - Former President of HCA Physician Services [USD46B]
>> - Former Region President & CEO of United Healthcare [USD190B]
>> - Former Executive VP of Trinity Health [USD20B]
>> - Senior Partner of PWC [20+ yrs] - Accounting Director
>> - Senior Partner of Dentons [20+ yrs] - Secretary
>> - Former SVP of Compliance & Integrity of CVS [USD292B]
>> - SVP of Client Services Business at CVS [USD292B]
>>
>> It is our mission to bring hardworking business owners & practitioners like yourself lucrative exit opportunities.
>>
>> Our team's track record spans over 1,600 transactions.
>>
>> If you'd be open to a conversation, we would love to discuss the potential with you.
>>
>> Sincerely,
>>
>> **Mark Cohen - Operations & Strategy Director**
>> mark.cohen@generalhealthgroup.com
>> GeneralHealth Group Inc
>> Central Europe Office: +41 44 551 98 67
>> U.S. Office: +1 917 789 5058

UNSUBSCRIBE

**Mark Cohen** <mark.cohen@generalhealthgroup.com>  Wed, Sep 14, 2022 at 5:23 AM
To: Michel <michelneret@usa.net>
Bcc: 21397640@bcc.hubspot.com

Hello Dr. Neret,

It's an absolute pleasure connecting with you.

Please choose the best time and day from the link below and let's chat!

https://appt.link/general-health-group-inc

Note: Once you select the date and time, reply to this email.

Best Regards,

Mark Cohen - Operations & Strategy Director
GeneralHealth Group Inc
C.E. Office: +41 44 551 98 67
U.S. Office: +1 917-789-5058
mark.cohen@generalhealthgroup.com

[Quoted text hidden]

---

**Michel** <michelneret@usa.net>  Sun, Sep 18, 2022 at 9:42 PM
To: Mark Cohen <mark.cohen@generalhealthgroup.com>

Ok done scheduled the meeting
[Quoted text hidden]

---

**Mark Cohen** <mark.cohen@generalhealthgroup.com>  Tue, Sep 20, 2022 at 7:42 AM
To: Michel <michelneret@usa.net>
Cc: Lesly Lopez <lesly.lopez@generalhealthgroup.com>
Bcc: 21397640@bcc.hubspot.com

Hello Dr. Neret,

NDA has been sent via DocuSign.

Attached is an information deck with some basic projections on our group.

At your convenience, please share any financials (2-3 years) or valuations on the business, and let's discuss our way forward if there is mutual interest.

Let me know if you have any questions.

Best regards,

Mark Cohen - Operations & Strategy Director
GeneralHealth Group Inc
+1 917-789-5058


GHG Information Deck - 2022



[Quoted text hidden]

---

**Michel** <michelneret@usa.net>  Sun, Sep 25, 2022 at 10:08 PM
To: Mark Cohen <mark.cohen@generalhealthgroup.com>

Hello Mark, I am sending you the preliminary non official financial reports, if, after checking this numbers out you still decide you want to proceed then I can send you the official reports, no need to waste both of our time, thanks

> On Sep 20, 2022, at 2:42 PM, Mark Cohen <mark.cohen@generalhealthgroup.com> wrote:
>
> Hello Dr. Neret,
>
> NDA has been sent via DocuSign.
>
> Attached is an information deck with some basic projections on our group.
>
> At your convenience, please share any financials (2-3 years) or valuations on the business, and let's discuss our way forward if there is mutual interest.
>
> Let me know if you have any questions.
>
> Best regards,
>
> Mark Cohen - Operations & Strategy Director
> GeneralHealth Group Inc
> +1 917-789-5058
>
>
> GHG Information Deck - 2022
>
> 
>
> On Mon, Sep 19, 2022 at 7:12 AM Michel <michelneret@usa.net> wrote:
>> Ok done scheduled the meeting

On Sep 14, 2022, at 5:23 AM, Mark Cohen <mark.cohen@generalhealthgroup.com> wrote:

Hello Dr. Neret,

It's an absolute pleasure connecting with you.

Please choose the best time and day from the link below and let's chat!

https://appt.link/general-health-group-inc

Note: Once you select the date and time, reply to this email.

Best Regards,

Mark Cohen - Operations & Strategy Director
GeneralHealth Group Inc
C.E. Office: +41 44 551 98 67
U.S. Office: +1 917-789-5058
mark.cohen@generalhealthgroup.com


> On Wed, Sep 14, 2022 at 11:48 AM Michel <michelneret@usa.net> wrote:
> Hello Mark, I would be willing to listen
>
> Michael G Neret MD
> michelneret@usa.net
>
>
>> On Sep 12, 2022, at 7:46 PM, Mark Cohen <mark.cohen@generalhealthgroup.com> wrote:
>>
>> Hi Michael,
>>
>> I hope you are doing well.
>>
>> My name is Mark Cohen and I'm the Operations Director here at **GeneralHealth Group Inc**.
>>
>> **Michael G Neret Md** fits our ideal profile for businesses we are interested in acquiring.
>>
>> GeneralHealth Group Inc. is the leader in the consolidation in the healthcare, pharma, and insurance industry.
>>
>> We are NOT brokers or advisors.
>>
>> With 200 years of industry experience and $150BN+ worth of transactions, we are working tirelessly to create better systems in the very fragmented sectors of the healthcare & pharmaceutical industries.
>>
>> Our direct partners are:
>>
>> - Former President of HCA Physician Services [USD46B]
>> - Former Region President & CEO of United Healthcare [USD190B]
>> - Former Executive VP of Trinity Health [USD20B]
>> - Senior Partner of PWC [20+ yrs] - Accounting Director
>> - Senior Partner of Dentons [20+ yrs] - Secretary
>> - Former SVP of Compliance & Integrity of CVS [USD292B]
>> - SVP of Client Services Business at CVS [USD292B]
>>
>> It is our mission to bring hardworking business owners & practitioners like yourself lucrative exit opportunities.
>>
>> Our team's track record spans over 1,600 transactions.