

# BARRON & NEWBURGER, P.C.

7320 N. Mopac Expy Ste 400
Greystone II
Austin, TX 78731
512-476-9103
www.bn-lawyers.com
Tax Identification No. 74-2400211
BNPC Account #: 15857.0PH

Invoice No: 99446

August 01, 2023

General Health Group, Inc.
General Health Group, Inc.
L270-244 5th Avenue
New York, NY 10001

# Invoice

*Re: Invoice for General Health Group, Inc- Michael Neret, MD*

| **Date** | **Staff** | **Description** | **Hours** | **Charges** |
|---|---|---|---|---|
| Services Rendered | | | | |
| 7/2/2023 | CM | Begin outlining response to request for temporary injunction based on mootness. | 0.40 | $150.00 |
| 7/2/2023 | PH | General work related to response to preliminary injunctive relief request. | 2.70 | $1,215.00 |
| | | <span style="color:red">What is "general work" and what does it entail for 2.7 hours?</span> | | |
| 7/2/2023 | PH | Strategy communications with co-counsel C. Murnane. | 0.40 | $180.00 |
| 7/3/2023 | PH | Draft notice of appearance. | 0.30 | $135.00 |
| 7/3/2023 | PL | Opened matter in CB<br>Added due dates to task list and calendar | 0.50 | $50.00 |
| 7/5/2023 | PH | Communications with opposing counsel as to upcoming preliminary injunction hearing and all related issues, including exploration of limiting pertinent issues due to mootness or other reasons.<br><br><span style="color:red">Please provide notes on this meeting. We were advised that there has been only one communication / call with the opposing counsel.</span> | 1.40 | $630.00 |
| 7/5/2023 | CM | Review of current pleadings and outline answer and response to the same. Discuss need for clarity on TRO hearing presence with P. Levine and C. Christensen. Request full set of pleadings in case file. | 0.70 | $262.50 |
| 7/6/2023 | CM | Discuss request for teleconference appearing with P. Levine and emails regarding the same with court. | 0.10 | $37.50 |
| 7/6/2023 | CM | Call with client representative Ruth Berenstein regarding case status and next steps in preparing for temporary injunction hearing.<br><span style="color:red">This call was 15 minutes.</span> | 0.30 | $112.50 |

| Date | Initials | Description | Hours | Amount |
|---|---|---|---|---|
| 7/10/2023 | PH | Work on preparation for injunction hearing - initial outline of direct examination of R. Berenstein in light of refusal of opposing counsel to commit to not proceeding with hearing and calling her to testify. <br><br>**Please provide notes for this outline or a copy of the examination outline;** | 2.50 | $1,125.00 |
| 7/12/2023 | GRS | General assistance in preparations for injunction hearing, including strategy communications with co-counsels C. Murnane and P Hammer.. <br><br>**Please provide meeting notes for this communication.** | 2.00 | $700.00 |
| 7/12/2023 | PH | Strategy meeting with co-counsels G. Siemankowski and C. Murnane. | 0.60 | $270.00 |
| 7/13/2023 | AH | Efiled Original Answer in State Court, 412th Judicial District, Brazoria County | 0.40 | $40.00 |
| 7/13/2023 | GRS | Finalization of answer. Filing of same. <br><br>**1.8 hours for 3 sentences of a response seems unrealistic.** | 1.80 | $630.00 |
| 7/13/2023 | CM | Review email and materials sent by client in relation to case, as possible factual defenses against claims of fraud. | 0.50 | $187.50 |
| 7/14/2023 | CM | Review email from opposing counsel Noah Meeks regarding settlement demand for $40,000.00 | 0.10 | $37.50 |
| 7/14/2023 | CM | Call with Greg Siemankowski and opposing counsel Noah Meeks to discuss case and upcoming temporary injunction hearing. Discuss proposed temporary injunction. Review Greg Siemankowski revisions and comment of opposing counsel Noah Meeks on form. Discuss case with client in brief call. <br><br>**What did we achieve with the opposing counsel on this call. Please provide notes;** | 1.10 | $412.50 |
| 7/14/2023 | GRS | Preparation for injunction hearing - numerous communications with opposing counsel, co-counsels C. Murnane and P. Hammer, review of key documents in file, and general review and analysis of terms proposed of possible TRO. <br><br>**Questionable. Why did we communicate with Noah and other counsels for 4.8 hours. What results were achieved with these 4.8 hours and where are the notes?** | 4.80 | $1,680.00 |
| 7/14/2023 | PH | Preparation for preliminary injunction hearing - numerous communications with opposing counsel, co-counsels C. Murnane and P. Hammer, review of key documents in file, and general review and analysis of terms proposed of TRO (only billed for half of actual 4.8 hours spent ). <br><br>**Once again, what results were achieved on this call with opposing counsel and please provide meeting notes of these long meetings.** | 2.40 | $1,080.00 |
| 7/17/2023 | GRS | Email with client. Discussion of case with C. Murnane | 0.30 | $105.00 |
| 7/17/2023 | GRS | Phone call with client | 0.30 | $105.00 |
| 7/17/2023 | GRS | Email and discussion with C. Murnane | 0.40 | $140.00 |
| 7/17/2023 | GRS | 5x Emails to and from client and opposing counsel | 0.50 | $175.00 |
| 7/18/2023 | GRS | 4 x email from client and C. Murnane and opposing counsel | 0.40 | $140.00 |

| 7/18/2023 | PH | Strategy communications with co-counsel G. Siemankowski and C. Murnane as to action plan in light of resolution of temporary injunction issue and receipt and review of plaintiff's settlement offer. | 0.40 | $180.00 |
| 7/18/2023 | PH | Initial work on counterclaim and related responsive pleading. | 1.80 | $810.00 |

| Date | TK | Description | Hours | Amount |
|---|---|---|---|---|
| 7/20/2023 | CM | Conduct legal research on possble structure of counterclaims and begin to outline amended answer with counterclaims based on factual predicates and background provided by client. | 2.10 | $787.50 |
| 7/26/2023 | GRS | Email from C. Murnane. Discussion of case with C. Murnane | 0.30 | No Charge |
| 7/27/2023 | CM | Review and respond to client email regarding status. Continue work on counterclaims. | 0.50 | $187.50 |

**Total Services**  30.00  **$11,565.00**

|  |  |
|---|---|
| Total New Charges | **$11,565.00** |
| Previous Balance | **$2,092.50** |

Payments

| Date | Type | Notes | Amount |
|---|---|---|---|
| 7/7/2023 | Payment | #apply funds | -$2,092.50 |
| 8/1/2023 | Payment | Auto Applied from Trust | -$907.50 |

|  |  |
|---|---|
| Total Payments and Credits | **-$3,000.00** |
| **Balance Due** | **$10,657.50** |

**Timekeeper Summary**

| Name | Hours | Rate | Amount |
|---|---|---|---|
| AHEWES | 0.40 | $100.00 | $40.00 |
| Cmurnane | 5.80 | $375.00 | $2,175.00 |
| Gsiemankowski | 10.50 | $350.00 | $3,675.00 |
| Gsiemankowski | 0.30 | No Charge | No Charge |
| Phammer | 12.50 | $450.00 | $5,625.00 |
| PLEVINE | 0.50 | $100.00 | $50.00 |

Trust Account for General Health Group, Inc- Michael Neret, MD

| Date | Type | Notes | Amount |
|---|---|---|---|
| 7/7/2023 | Deposit | retainer | $3,000.00 |
| 7/7/2023 | Disburse | apply funds inv 98950 | -$2,092.50 |
| 8/1/2023 | ApplyToInvoice | Auto Applied from Trust | -$907.50 |

|  |  |
|---|---|
| Previous Trust Balance | **$0.00** |
| Total Trust Transactions | **$0.00** |
| **Current Trust Balance:** | **$0.00** |

Any payments received after the invoice date will be reflected on the next bill. If you have any questions regarding this bill, please email us at hlenett@bn-lawyers.com. Unpaid balances are subject to interest as allowed by law. Please include the invoice number on all payments. Barron & Newburger, PC will never email changes to payment instructions unless we provide prior written communication.

 **Ruth Berenstein <ruth.berenstein@generalhealthgroup.com>**

---

## RE: Michel Neret, MD - Texas Court (ENGAGEMENT LETTER)
1 message

---

**Paul Hammer** <phammer@bn-lawyers.com>                                   Wed, Jun 28, 2023 at 4:25 PM
To: Ruth Berenstein <ruth.berenstein@generalhealthgroup.com>

Thanks. Will review internally and circle back soon.  Do you know if the 7/17/23 extension was given by opposing counsel?  Is opposing counsel still communicating with your previous attorneys?

**Paul Hammer**

**Shareholder**

Barron and Newburger, P.C.

5555 W. Loop South, Ste. 235

Bellaire, Texas 77401

(832) 271.4003 |Office

(281) 840.1072 |Cell

(512) 279.0310 |Fax

phammer@bn-lawyers.com



  

  

This email is confidential.  If you are not the intended recipient, please advise by return email and delete this message, including all copies and backups.

---

**From:** Ruth Berenstein <ruth.berenstein@generalhealthgroup.com>
**Sent:** Wednesday, June 28, 2023 3:39 PM
**To:** Paul Hammer <phammer@bn-lawyers.com>
**Cc:** Ruth Berenstein <ruth.berenstein@generalhealthgroup.com>
**Subject:** Re: Michel Neret, MD - Texas Court (ENGAGEMENT LETTER)

and to be fully transparent;

we had RMWBH reach out for the initial discussion with meek (to extend to july 17th) but besides that, they will not be retained moving forward and it will be your firm going forward;

On Wed, Jun 28, 2023 at 4:31 PM Ruth Berenstein <ruth.berenstein@generalhealthgroup.com> wrote:

> Hi Paul,
>
> Please see attached signed EL.
>
> Our position is fairly simple and does not need a lot of back n forth with the opposing side to be honest;
>
> Please see exhibits attached;
>
> 1) Wellmed termination and repayment letters. Dr Neret surprisingly showed us this after the acquisition and continuously denied that its his problem and that he will not pay the government. That was the first severe red flag that we saw;
>
> 2) A simple report (can potentially have a more detailed explanation created by IT and accounts payable) on the work done. Including all billing work and recruitment work, the cost is somewhere around 35,000 - 40,000 that he needs to pay.
>
> 3) APA , employment and all other agreements related to the business;
>
> 4) our correspondence with USBank
>
> 5) our correspondence with IBC bank
>
> 6) our correspondence with Noah Meek ( his counsel )
>
> They can either pay us and everyone walks away and we can do a rescission of the agreements or we will go full force litigation ask for legal costs, ask them to pay their government dues to WellMed especially because he sneakingly did not disclose any of it to us and seek other damages
>
> Please let me know when the retainer hits the bank account and if you have any more questions;

On Mon, Jun 26, 2023 at 2:57 PM Paul Hammer <phammer@bn-lawyers.com> wrote:

> Mrs. Berenstein:

It was a pleasure speaking with you today.  As discussed, please find attached the engagement letter and related instructions.  We look forward to helping you resolve this matter.


Regards,


**Paul Hammer**

**Shareholder**


Barron and Newburger, P.C.

5555 W. Loop South, Ste. 235

Bellaire, Texas 77401

(832) 271.4003 |Office

(281) 840.1072 |Cell

(512) 279.0310 |Fax

phammer@bn-lawyers.com



 

 

This email is confidential.  If you are not the intended recipient, please advise by return email and delete this message, including all copies and backups.

---

**From:** Ruth Berenstein <ruth.berenstein@generalhealthgroup.com>
**Sent:** Friday, June 23, 2023 5:48 PM
**To:** Paul Hammer <phammer@bn-lawyers.com>
**Subject:** Re: Michel Neret, MD - Texas Court


Absolutely.


Please send over an invite or let me know and I will send one


On Fri, Jun 23, 2023 at 3:51 PM Paul Hammer <phammer@bn-lawyers.com> wrote:

> Mrs. Berenstein:

Thanks for your email.  I am travelling currently.  May I call you on Monday morning?  Would 10AM CST work for you?  Thanks, and look forward to it.

Regards,

**Paul Hammer**

**Shareholder**

Barron and Newburger, P.C.

5555 W. Loop South, Ste. 235

Bellaire, Texas 77401

(832) 271.4003 |Office

(281) 840.1072 |Cell

(512) 279.0310 |Fax

phammer@bn-lawyers.com



 

 

This email is confidential.  If you are not the intended recipient, please advise by return email and delete this message, including all copies and backups.

---

**From:** Ruth Berenstein <ruth.berenstein@generalhealthgroup.com>
**Sent:** Friday, June 23, 2023 2:18 PM
**To:** Paul Hammer <phammer@bn-lawyers.com>
**Cc:** Ruth Berenstein <ruth.berenstein@generalhealthgroup.com>
**Subject:** Re: Michel Neret, MD - Texas Court

Morning Paul

Tried you a few times this morning.

What time can you chat?

On Fri, Jun 23, 2023 at 10:57 AM Paul Hammer <phammer@bn-lawyers.com> wrote:

Good morning -

I hope all is well.  It has come to my firm's attention that General Health Group has been named as defendant in the above referenced matter that was filed (complaint attached).  My firm, one of Texas's oldest and most well-regarded litigation boutiques, has successfully defended many companies in similar cases involving alleged fraud, with great success, and is experienced in this jurisdiction.  Should you wish to discuss these important issues, please let me know; it would be our honor and pleasure.

Warm Regards,

**Paul Hammer**

**Shareholder**

Barron and Newburger, P.C.

5555 W. Loop South, Ste. 235

Bellaire, Texas 77401

(832) 271.4003 |Office

(281) 840.1072 |Cell

(512) 279.0310 |Fax

phammer@bn-lawyers.com



 

 

This email is confidential.  If you are not the intended recipient, please advise by return email and delete this message, including all copies and backups.



**BARRON & NEWBURGER, P.C.**

**Paul Hammer**

Direct Dial: (832) 271-4003 | phammer@bn-lawyers.com

*Licensed in TX, LA, and PR*

June 26, 2023

Mrs. Ruth Berenstein
L270-244 5th Avenue
New York, NY 10001

General Health Group, Inc.
L270-244 5th Avenue
New York, NY 10001

General Health Group of Texas, LLC
L270-244 5th Avenue
New York, NY 10001

Via email – ruth.berenstein@generalhealthgroup.com

> Re:    Civil Proceeding – *Michael Neret, MD v. General Health Group, Inc. et al.,*
> Civil Case No. 123111-CV in the District Court of Brazoria County,
> Texas

Dear Mrs. Berenstein:

This letter is intended to confirm Barron & Newburger, P.C.'s (hereinafter the "Firm") engagement to represent your interests and those of General Health Group, Inc. and General Health Group of Texas, LLC (hereinafter the "Clients") as defendants in the above referenced case, which involves allegations of contractual breach, amongst others.

Senior counsel will be primarily handling this matter. From time-to-time, they may call upon other firm attorneys or professionals to assist. The rates of firm attorneys range from $325 to $525 per hour. We will utilize attorneys with the lower hourly rates, whenever feasible. The rate for firm paralegals is $125 per hour. Prior to commencing work and upon returning this signed engagement letter, Clients will make a payment of $3,000.00[1] to the Firm, which will be an advance against legal fees to be incurred. Please note that legal fees may exceed this amount. For your convenience, instructions for making payment are included.

We will bill Clients monthly, preferably via email. Bills will be due within thirty days of billing. Please note that while Clients will be responsible for expenses incurred in this case, we do not charge for domestic long distance, faxes, and in-contract Lexis and Westlaw usage.

The Firm may terminate this Agreement under the following circumstances: (a) with the consent of Clients; (b) in the event that Clients refuses to honor their obligations under any applicable law or under this Agreement; (c) in the event that Clients refuses to cooperate with the Firm in pursuing the objectives of the representation; (d) if Clients fail to perform under the terms of this Agreement; (e) if the Firm is required to withdraw under the ethical rules applicable to attorneys; or (f) upon the conclusion of the representation; provided, however, that the Firm may not withdraw from an active court proceeding without permission from the Court.

---

[1] Payment of this advance and of future invoices may be made by any of the three Clients or by third parties through credit card, check, wire, ACH, or certified funds.



If this Agreement is enforced through any legal proceedings, the Firm shall be entitled also to recover reasonable attorney's fees, court costs, and interest.

This Agreement is performable in Harris County, Texas and shall be construed pursuant to the laws of the State of Texas.

This Agreement constitutes the entire agreement of the parties hereto.

Please sign below and return this letter to confirm the terms of this engagement. Please also sign and return the attached Joint Representation Form.

We very much are looking forward to working with you on this case.

Yours truly,

BARRON & NEWBURGER, P.C.

*Paul Hammer*

Clients agree to retain Barron & Newburger, P.C. as per the above terms:

Agreed:

**Ruth Berenstein**

Signature: _Ruth Berenstein_

Date: 6/28/2023

**General Health Group, Inc.**

Signature of authorized representative: _Ruth Berenstein_

Title: managing director

Date: 6/28/2023

**General Health Group of Texas, LLC**

Signature of authorized representative: _Ruth Berenstein_

Title: managing director

Date: 6/28/2023

CONTACT INFORMATION[2]

Contact Name: _____

Contact Email: _____

Contact Mailing Address: _____

Contact Telephone Number: _____

---

[2] If different for the Clients, please clearly indicate and provide the requested information separately.

# JOINT REPRESENTATION FORM

**Re:**    *Michael Neret, MD v. General Health Group, Inc. et al.*

Civil Case No. 123111-CV in the District Court of Brazoria County, Texas

Dear Mrs. Berenstein:

We have been asked to represent your interests and those of General Health Group, Inc. and General Health Group of Texas, LLC (collectively the "defendants") in the above-captioned matter.

Pursuant to applicable rules of professional conduct, we are not permitted to represent a client if the representation of that client will be directly averse to another client, unless (1) we reasonably believe that the representation will not adversely affect the relationship with the other client; and (2) each client consents after disclosure. In addition, we may not represent a client if the representation of that client may be materially limited by our responsibilities to another client, unless (1) we reasonably believe the representation will not be adversely affected; and (2) the client consents after disclosure. Similarly, if we represent multiple clients in a single case, we must explain the implications of common representation and the advantages and risks involved.

The complaint alleges act(s) of contractual breach, amongst others. It does not appear to us that Barron & Newburger, P.C. has a conflict in representing the defendants in this matter so long as there are no disputes as to the independence of each defendant's conduct and the relevant facts giving rise to liability (if any exists).

While we do not believe at the present time that a conflict exists with respect to our representation of the defendants, a conflict could arise in the future. For example, the parties may disagree on answers to discovery or on pleadings. It is possible that during the discovery phase, one defendant's views differ from the other defendants. Additionally, one party may wish to settle, and the other parties may not wish to settle. Also, the defendants may disagree on the amount to be offered to settle the case or on each defendant's proportional share of a settlement offer. If any of these potential scenarios arises, we may be able to resolve the conflict. However, if a conflict arises that cannot be resolved, it may become advisable for each defendant to retain its own counsel. If a conflict arises that cannot be resolved and waived, we will either withdraw from representing all defendants or we will represent whomever the rules allow us to represent. In the absence of an actual conflict, it is impossible to pre-determine who the rules will allow us to represent.

To ensure compliance with the applicable rules of professional conduct, we would appreciate it if you would sign below, and return it as soon as possible. We appreciate your cooperation in dealing with these matters.

Yours truly,

BARRON & NEWBURGER, P.C.

*Paul Hammer*

Agreed as to Joint Representation:

**Ruth Berenstein**

Signature: _Ruth Berenstein_

Date: 6/28/2023

**General Health Group, Inc.**

Signature of authorized representative: _Ruth Berenstein_

Title: managing director

Date: 6/28/2023

**General Health Group of Texas, LLC**

Signature of authorized representative: _Ruth Berenstein_

Title: managin director

Date: 6/28/2023

 **Ruth Berenstein <ruth.berenstein@generalhealthgroup.com>**

---

## Michel Neret, MD - Texas Court
1 message

**Paul Hammer** <phammer@bn-lawyers.com>                                   Fri, Jun 23, 2023 at 8:27 PM
To: "ruth.berenstein@generalhealthgroup.com" <ruth.berenstein@generalhealthgroup.com>

Good morning -

I hope all is well.  It has come to my firm's attention that General Health Group has been named as defendant in the above referenced matter that was filed (complaint attached).  My firm, one of Texas's oldest and most well-regarded litigation boutiques, has successfully defended many companies in similar cases involving alleged fraud, with great success, and is experienced in this jurisdiction.  Should you wish to discuss these important issues, please let me know; it would be our honor and pleasure.

Warm Regards,

**Paul Hammer**

**Shareholder**

Barron and Newburger, P.C.

5555 W. Loop South, Ste. 235

Bellaire, Texas 77401

(832) 271.4003 |Office

(281) 840.1072 |Cell

(512) 279.0310 |Fax

phammer@bn-lawyers.com



 

 

This email is confidential.  If you are not the intended recipient, please advise by return email and delete this message, including all copies and backups.

**2 attachments**

 **PJH - B & N Bio.pdf**
222K

**Neret v. General Health Group (Brazoria).pdf**
2373K

## CAUSE NO. 123111-CV

| | | |
|---|---|---|
| **MICHEL NERET, MD** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **v.** | § | **BRAZORIA COUNTY, TEXAS** |
| | § | |
| **GENERALHEALTH GROUP, INC.,** | § | |
| **MORDECAI GAL a/k/a MARK** | § | |
| **COHEN, LESLY LOPEZ a/k/a RUTH** | § | |
| **BERENSTEIN, and** | § | |
| **GENERALHEALTHGROUP OF** | § | |
| **TEXAS, LLC** | § | **412TH JUDICIAL DISTRICT** |

## <u>TEMPORARY RESTRAINING ORDER</u>

After considering the application for a temporary restraining order of Plaintiff Michel Neret, MD ("Dr. Neret"), the pleadings, the affidavit, the other evidence presented, and the arguments of counsel, if any, the Court finds that granting a temporary restraining order is appropriate. In furtherance of the same:

1.  The Court FINDS that it clearly appears from the facts set forth in <u>Plaintiff's Original Petition & Application for Injunctive Relief</u> and the affidavit and evidence attached thereto that Defendants have interfered with Plaintiff's banking relationships, including by withdrawing funds from Plaintiff's bank accounts, causing Plaintiff's bank accounts to be locked, attempting to interfere with Plaintiff's payment of employee payroll, attempting to interfere with Plaintiff's relationships with third-party payors including but not limited to United HealthCare, and in other ways interfering with Plaintiff's business operations and have threatened at times including on 5/24/2023 to continue to do so. The Court also FINDS that it clearly appears that Defendants are trying to exert ownership and control of Plaintiff's medical practice but are not licensed or permitted under Texas law to own or operate a medical practice.

2.  The Court FINDS that Defendants' interference has caused and is likely to continue to cause substantial disruption and harm to Plaintiff's business affairs. The Court further FINDS that the balance of equities favors injunctive relief. The Court further FINDS that unless Defendants are immediately restrained as set forth below that Plaintiff will suffer imminent and irreparable harm.

3.  The Court FINDS that the issuance of a temporary restraining order without notice under TRCP 680 is proper because of the continuing harm to Plaintiff.

4.  The Court FINDS that the issuance of injunctive relief in this matter is authorized and permitted under CPRC § 65.011(1), (3), and (5).

5.     The Court RESTRAINS Defendants GeneralHealth Group, Inc., Mordecai Gal a/k/a Mark Cohen, Lesly Lopez a/k/a Ruth Berenstein, and GeneralHealthGroup of Texas, LLC as follows:

   (a)     Refrain from attempting to withdraw or transfer funds from, access, or claim or exert ownership, control, or dominion over, or lock or restrict Plaintiff's use of any bank account or financial account held in the name of or for the benefit of Plaintiff Michel Neret, MD or his medical practice, including but not limited to any such accounts at US Bank or IBC Bank;

   (b)     Refrain from attempting to access or claim or exert ownership, control, or dominion over any other property or account held in the name of or for the benefit of Plaintiff Michel Neret, MD or his medical practice; and

   (c)     Refrain from contacting any health insurance entities (including but not limited to United HealthCare) or government payor on behalf of, in the name of, or purporting to act on behalf of or in the name of Plaintiff Michel Neret, MD or his medical practice.

6.     The Court ORDERS the Clerk to issue notice to Defendants Defendants GeneralHealth Group, Inc., Mordecai Gal a/k/a Mark Cohen, Lesly Lopez a/k/a Ruth Berenstein, and GeneralHealthGroup of Texas, LLC to show cause why a temporary injunction should not be issued against said Defendants, and that a hearing on Plaintiff's application for temporary injunction is set for:

   June _____, 2022 at _____ AM/PM.

   The purpose of the hearing will be to determine whether this temporary restraining order should be made a temporary injunction pending a full trial on the merits.

7.     The Court sets bond at:                    $_____.

8.     This Order is binding upon Defendants GeneralHealth Group, Inc., Mordecai Gal a/k/a Mark Cohen, Lesly Lopez a/k/a Ruth Berenstein, and GeneralHealthGroup of Texas, LLC, all of said Defendants' agents, employees, and attorneys, and all persons in active concert or participation with said Defendants who receive actual notice of this Order by personal service or otherwise.

9.     This Order expires at the end of the day 14 days after this order is signed as permitted by TRCP 680 or upon conclusion of the TI hearing and a ruling on Plaintiff's request for a temporary injunction, whichever occurs first.

   SIGNED May _____, 2023 at _____ AM / PM.


                           _____
                           JUDGE PRESIDING

Filed for Record
5/26/2023 2:31 PM
Cassandra C. Tigner, District Clerk
Brazoria County, Texas
123111-CV
Stephanie Dodson, Deputy

CAUSE NO. _____
123111-CV

| | | |
|---|---|---|
| **MICHEL NERET, MD** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **v.** | § | **BRAZORIA COUNTY, TEXAS** |
| | § | |
| **GENERALHEALTH GROUP, INC.,** | § | |
| **MORDECAI GAL a/k/a MARK** | § | |
| **COHEN, LESLY LOPEZ a/k/a RUTH** | § | |
| **BERENSTEIN, and** | § | |
| **GENERALHEALTHGROUP OF** | § | |
| **TEXAS, LLC** | § | **_____ JUDICIAL DISTRICT** |

## PLAINTIFF'S ORIGINAL PETITION AND
## APPLICATION FOR INJUNCTIVE RELIEF

1.     This lawsuit is brought by Plaintiff **Michel Neret, MD** ("Dr. Neret") for fraud and declaratory judgment against Defendants **GeneralHealth Group, Inc.** ("GHG"), **Mordecai Gal a/k/a Mark Cohen**, **Lesly Lopez a/k/a Ruth Berenstein**, and **GeneralHealthGroup of Texas, LLC** ("GHG of Texas") to rescind and unwind the sale of Plaintiff's medical practice to Defendants, which Defendants obtained as a part of a scam.  Attached in support is the Affidavit of Michel Neret, MD.

## I. PARTIES

2.     Plaintiff **Michel Neret, MD** ("Dr. Neret") is a physician who is a citizen and resident of Texas.

3.     Defendant **GeneralHealth Group, Inc.** ("GHG") is a Florida corporation which does business but is not registered in the State of Texas which may be served through the Texas Secretary of State which may be directed to Defendant GHG through its managing principal Lesly Lopez at L270-244 5th Avenue, New York, NY 10001.

4.     Defendant **Mordecai Gal a/k/a Mark Cohen** is an individual who is not a resident of the State of Texas who is believed to be a fugitive who is a resident of Ontario, Canada, New York, New York, or Florida who may be served at L270-244 5th Avenue, New York, NY 10001 or

wherever he may be found.

5.      Defendant **Lesly Lopez a/k/a Ruth Berenstein** is an individual who is not a resident of the State of Texas who is believed to be a fugitive who is a resident of New York or Florida who may be served at L270-244 5th Avenue, New York, NY 10001 or wherever she may be found.

6.      Defendant **GeneralHealthGroup of Texas, LLC** ("GHG Texas") is a Texas limited liability company with its principal office in the State of Texas which may be served through its registered agent ZenBusiness Inc. at 5511 Parkcrest Dr., Suite 103, Austin, Texas 78731.

## II. JURISDICTION & VENUE

7.      This Court has jurisdiction over the controversy because the damages are within the jurisdictional limits of the Court.  Pleading to the Court only, it is stated, purely for the purposes of TRCP 47(c), that Plaintiff is presently seeking relief within the range of TRCP 47(c)(4).

8.      Venue is proper in Brazoria County, Texas under CPRC § 15.011 because all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Brazoria County, Texas.

## IV. FACTS

9.      This lawsuit arises out of Defendants defrauding Plaintiff Dr. Neret into a sham sale of his practice to Defendants so that Defendants could then access and raid Plaintiff's practice bank accounts.  Plaintiff Michel Neret, MD is a physician licensed to practice in the State of Texas with practice offices in Brazoria County, Texas and Matagorda County, Texas.

10.     Defendant Mordecai Gal is an individual who has been charged with sexual exploitation and sexual assault.[1]  Defendant Mr. Gal is married to Defendant Lesly Lopez.  Defendant Mordecai Gal sometimes uses and goes by the name Mark Cohen.  Defendant Lesly Lopez

---

[1] It appears that Defendant Mr. Gal is the individual described as being arrested for "sexual exploitation and sexual assault" in Ontario, Canada in the following article: https://www.cp24.com/news/former-youth-leader-at-mosque-charged-in-sexual-exploitation-case-york-regional-police-1.4777221?cache=zviomxnayn

sometimes uses and goes by the name Ruth Berenstein.

11.     Using the alias Mark Cohen, Defendant Mordecai Gal formed Defendant GeneralHealth Group, Inc. ("GHG").   Defendant Ms. Lopez is identified as the "managing principal" of Defendant GHG on certain corporate paperwork, including the 2022 annual report attached as **Exhibit 3**.  Defendant GHG of Texas was formed in March 2023 and Plaintiff has information and belief that Defendants are using Defendant GHG of Texas as a part of their fraudulent scheme and that Defendant GHG of Texas is an alter ego of Defendants.

12.     Defendant GHG is not a professional entity permitted under Texas law to own or operate a medical practice.

13.     Defendants Mr. Gal and Ms. Lopez created and/or had created a website for Defendant GHG that holds Defendant GHG out as having, "$150BN+" in "Completed Transactions," "$30BN+" in "Managed Revenue" and "300+" "Locations Under Management."   All of these claims are false.  Defendant GHG has no substantial practice operations, if any at all.  An excerpt from a screenshot of Defendant GHG's website taken on 5/24/2023 is shown below:



Plaintiff has information and belief that every single factual statement on this screenshot is false.

14.     Defendant GHG's scheme, which Plaintiff has information and belief has been

perpetrated on numerous other practices, works as follows.  Defendants hold Defendant GHG out as a large, well-funded, and experienced enterprise that purchases and operates medical practices.  Defendant Mr. Gal goes by the name "Mark Cohen" in his communications with victims.  After making initial contact with Plaintiff in or around November 2022 and receiving some documents from Plaintiff, the Defendants present the physician owner with a proposed contract to buy the physician's practice at an extremely attractive price but with the purchase price to be paid several years in the future.  In this case, Defendants proposed to have Defendant GHG buy Plaintiff Dr. Neret's family medicine practice for $7,000,000, with certain payments over time but the bulk of the purchase price to be paid after 3 years.  A true and correct copy of the Asset Purchase Agreement is attached as **Exhibit 1**.

15.    As a part of a further effort to prevent Plaintiff from detecting Defendants' elaborate fraud, around April 2023, Defendant Mr. Gal conducted a site visit of Plaintiff's Bay City, Texas location with a physician who at the time was held out as a member of Defendant GHG's group. However, this physician later told Plaintiff Dr. Neret that he was not affiliated with Defendant GHG and was simply hired for the limited purpose of accompanying Defendant Mr. Gal to meet Plaintiff.

16.    Defendants' fraudulent scheme also involves various other efforts to conceal Defendants' identities and to create the appearance that Defendants have a large multi-billion dollar ongoing business, which are not exhaustively detailed in this Petition.  Defendants list 6 individuals with photographs and biographies on Defendant GHG's website, and Plaintiff has information and belief that these individuals either do not exist and are made up or have no association with Defendants.  Additionally, Defendants put the name of the large law firm ArentFox Schiff on the asset purchase agreement's notices provision.  However, on 5/23/2023, a senior partner at ArentFox Schiff confirmed that they have never represented any of the Defendants.

17.     Key to Defendants' scheme is that the proposed agreement purports to grant Defendant GHG immediate access to the practice's bank accounts.  In this case, Defendants immediately proceeded to raid the bank accounts, including the accounts containing funds to make payroll, from Plaintiff's bank accounts, causing Plaintiff to lose access to Plaintiff's operating accounts.

18.     On 5/24/2023, a cease and desist demand was sent to Defendants on behalf of Plaintiff Dr. Neret.  Defendants responded back by making further threats to interfere with banking and business relationships against Plaintiff Dr. Neret and by saying "We will not cease and desist." A true and correct copy of the communication is attached as **Exhibit 2**.

19.     Plaintiff asserts that at all relevant times, Defendants Mr. Gal and Ms. Lopez were acting in conspiracy with, aiding and abetting, and assisting and encouraging one-another and Defendant GHG and were acting as actual and apparent agents and vice principals of Defendant GHG.

## V. CAUSES OF ACTION

### V.1. Claim 1 – Fraud/Fraudulent Inducement

20.     Based on the pertinent facts set forth in this Petition, a claim for fraud/fraudulent inducement is asserted against Defendants.

21.     Defendants represented that Defendant GHG was a large, successful, active business that regularly purchases physician practices.  It is not.  Defendants' purported business is a sham. Defendants induced Plaintiff Dr. Neret to enter into the asset purchase agreement knowing and/or intending that they would never be able to perform under the agreement and/or for the primary or sole purpose of raiding the assets of Plaintiff's practice.  Defendants' misrepresentations and omissions and nondisclosures of material fact were significant and material to inducing Plaintiff Dr. Neret into entering the asset purchase agreement.

22.     _Damages_: With respect to Plaintiff's fraud/fraudulent inducement claim, Plaintiff seeks

the following relief from Defendants, jointly and severally: (1) all actual damages including but not limited to economic damages, mitigation damages, damage to credit, and restitution, (2) exemplary damages, (3) nominal damages, (4) rescission, (5) temporary and permanent injunctive relief enjoining Defendants from continuing to interfere with Plaintiff's business, and (6) prejudgment interest, postjudgment interest, and costs.

## V.2. Claim 2 – Tortious Interference with Existing Contracts

23.    Based on the pertinent facts set forth in this Petition, a claim for tortious interference with existing contracts is asserted against Defendants.

24.    Defendants induced Plaintiff to enter into a contract by fraud, have looted Plaintiff's bank accounts or caused them to be locked, and have threatened to and are continuing to try to interfere with Plaintiff's banking relationships and other similar relationships.  Per the 5/24/2023 communication with Defendants attached as Exhibit 2, Defendants have advised that they intend to continue to interfere with Plaintiff's business unless Plaintiff makes a $15,000 payoff/extortion payment.

25.    *Damages*: With respect to Plaintiff's tortious interference claim, Plaintiff seeks the following relief from Defendants, jointly and severally: (1) all actual damages including but not limited to economic damages, mitigation damages, damage to credit, and restitution, (2) exemplary damages, (3) nominal damages, (4) rescission, (5) temporary and permanent injunctive relief enjoining Defendants from continuing to interfere with Plaintiff's business, and (6) prejudgment interest, postjudgment interest, and costs.

## V.3. Claim 3 – Declaratory Judgment

26.    Based on the pertinent facts set forth in this Petition, Plaintiff seeks a declaratory judgment that the transaction between Plaintiff and Defendant GHG, including the asset purchase agreement and related leases, is rescinded, voided, and/or void.

27.    Defendants induced Plaintiff into the transaction by fraud.

28.    Defendants are not lawfully able to own or operate a medical practice in the State of Texas because they are a Florida for-profit corporation and a Texas non-professional LLC.

29.    _Damages_: With respect to Plaintiff's declaratory judgment claim, Plaintiff seeks the following damages and relief from Defendants, jointly and severally: (1) declaratory judgment, (2) supplemental relief including but not limited to injunctive relief under CPRC § 37, (3) temporary and permanent injunctive relief enjoining Defendants from continuing to interfere with Plaintiff's business, (4) reasonable and necessary attorney's fees under CPRC § 37.009, and (5) postjudgment interest and costs.

## VI. APPLICATION FOR INJUNCTIVE RELIEF

30.    Based on the facts set forth above, supported by the attached <u>Affidavit of Michel Neret, MD</u>, Plaintiff seeks a temporary restraining order and a temporary and permanent injunction, and commanding that Defendants GHG, Mr. Lopez a/k/a Berenstein, and Mr. Gal a/k/a Cohen:

(a)    Refrain from attempting to withdraw or transfer funds from, access, or claim or exert ownership, control, or dominion over, or lock or restrict Plaintiff's use of any bank account or financial account held in the name of or for the benefit of Plaintiff Michel Neret, MD or his medical practice, including but not limited to any such accounts at US Bank or IBC Bank;

(b)    Refrain from attempting to access or claim or exert ownership, control, or dominion over any other property or account held in the name of or for the benefit of Plaintiff Michel Neret, MD or his medical practice; and

(c)    Refrain from contacting any health insurance entities (including but not limited to United HealthCare) or government payor on behalf of, in the name of, or purporting to act on behalf of or in the name of Plaintiff Michel Neret, MD or his medical practice.

31.    Based on the facts set forth in this Petition, it is probable that Plaintiff will prevail on the merits.  Defendants scammed Plaintiff into selling his medical practice to them and have and are threatening to continue to interfere with Plaintiff's business.  Additionally, Defendants are not

able to lawfully own a medical practice in the State of Texas because none of them are licensed to practice medicine in the State of Texas or are a Texas professional entity. Defendants have specifically stated that they intend to continue to interfere with Plaintiff's business unless they are paid off, as described in the 5/24/2023 email chain from Defendants attached as **Exhibit 2**.

32.    Additionally, Plaintiff has information and belief that Defendants are unlikely to have non-exempt assets sufficient to pay a judgment for damages against them. See <u>Pipkin v. Jvm Operating, L.C.</u>, 197 B.R. 47, 56 (E.D. Tex. 1996) ("*A theoretical right to recover money damages will not constitute an adequate legal remedy where difficulties in the collection of any judgment render that remedy illusory.*").

33.    Injunctive relief is proper under CPRC § 65.011(1), (3), and (5).

34.    Plaintiff is willing to post bond.

## VI. CONDITIONS PRECEDENT

35.    All conditions precedent to Plaintiff's recovery and the claims made the subject of this suit have occurred, have been performed, or have been waived or excused.

## VII. AMENDMENT

36.    Plaintiff reserves the right to amend its petition as discovery progresses, as new information is discovered, and as further allowed by the Texas Rules of Civil Procedure. Where appropriate, the claims and defenses in this Petition are pled in the alternative.

## VIII. <u>PRAYER</u>

Plaintiff prays that citation be issued for Defendants to appear and answer, and that the Court award Plaintiff relief from Defendants, jointly and severally, including but not limited to:

(1)    Actual damages;
(2)    Exemplary damages;
(3)    Nominal damages;
(4)    Rescission;
(5)    Declaratory judgment including supplemental relief as permitted by CRPC § 37;

 (6)  Equitable relief, including but not limited to temporary and permanent injunctive relief;

 (7)  Reasonable and necessary attorney's fees under CPRC § 37.009; and

 (8)  Prejudgment interest, postjudgment interest, and costs.

Plaintiff further prays that the Court grant Plaintiff such other and further relief to which Plaintiff

may be justly entitled.

          Respectfully submitted,

          GAUNTT KOEN BINNEY & KIDD, LLP

          By:  **/s/ Noah Meek**
             Noah E. W. Meek
             State Bar No. 24084554
             E-mail: noah.meek@gkbklaw.com
             25700 I-45 North, Suite 130
             Spring, Texas  77386
             Phone: (281) 367-6555
             Fax:  (281) 367-3705

          **ATTORNEYS FOR PLAINTIFF**

CAUSE NO. _____

| | | |
|---|---|---|
| **MICHEL NERET, MD** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **v.** | § | **BRAZORIA COUNTY, TEXAS** |
| | § | |
| **GENERALHEALTH GROUP, INC.,** | § | |
| **MORDECAI GAL a/k/a MARK** | § | |
| **COHEN, LESLY LOPEZ a/k/a RUTH** | § | |
| **BERENSTEIN, and** | § | |
| **GENERALHEALTHGROUP OF** | § | |
| **TEXAS, LLC** | § | **_____ JUDICIAL DISTRICT** |

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF BRAZORIA** | § |

## AFFIDAVIT OF MICHEL NERET, MD

Before me, the undersigned notary, appeared Michel Neret, MD, a person known to me or identified to me by driver's license, who under oath stated as follows:

1. My name is Michel Neret, MD, I am over 18 years of age, of sound mind, and capable of making this affidavit.  I am the owner of my family medicine practice which is located in the State of Texas.  The matters set forth in this affidavit are true and correct and within my personal knowledge.

2. I verify that the facts set forth in <u>Plaintiff's Original Petition & Application for Injunctive Relief</u> ("Petition") in the above-referenced lawsuit are true and correct and within my personal knowledge.

3. In or around November 2022, I was approached by individuals from a business called GeneralHealth Group, Inc. ("GHG") who wanted to buy my family medicine practice.  These individuals included a man who went by the name "Mark Cohen," which I later learned is an alias for Mordecai Gal, and Mr. Gal's wife who goes by both "Ruth Berenstein" and "Lesly Lopez."

4. Mr. Gal held GHG out as a large well-established business with substantial funding and experience in buying, running, and operating physician practices.  He referred to GHG as doing billion-dollars in deals and running numerous medical practices.  I looked at GHG's website, which seemed to confirm this.

5. Based on their promises and representations, , I was interested in selling my practice to them. After I sent them certain financial information, they offered to buy my practice from me for $7,000,000, the bulk of which was to be paid after 36 months.  Additionally, they agreed to lease buildings from me in Brazoria County and Matagorda, County, Texas

5. Based on their promises and representations, , I was interested in selling my practice to them. After I sent them certain financial information, they offered to buy my practice from me for $7,000,000, the bulk of which was to be paid after 36 months. Additionally, they agreed to lease buildings from me in Brazoria County and Matagorda, County, Texas

6. In or around April 2023, Mr. Gal a/k/a Cohen came to Texas to see my practice. He came with an out-of-state physician Dr. Bonnett who Mr. Gal held out as being a top financial officer and key part of Defendant GHG's team. When I spoke to this physician later, he told me that he did not have any employment or long-standing relationship with Defendant GHG, but was just hired for the one job of visiting my practice with Mr. Gal.

7. It quickly became apparent that GHG was not willing or able to fulfill its promises. GHG almost immediately fell behind on rent under the two leases and was making payments only out of my practice account rather than its general funds.

8. I subsequently learned that Mr. Cohen's name is actually Mordecai Gal and that he was charged a few years ago with sex offenses against a minor in Ontario, Canada. When I confronted Mr. Gal about this, he confirmed his use of a different name and did not deny that he committed sex offenses against a minor. The man who I met with who held himself out as "Mark Cohen" is the same person who is identified in photographs from 2020 news reports as being the "Mordecai Gal" charged with sex offenses against a minor.

9. Defendants have sought to empty, lock, and interfere with my practice's bank accounts and have threatened to continue to do so, as outlined in the 5/24/2023 correspondence attached to the Petition as **Exhibit 2**.

10. I will suffer imminent and irreparable harm for which legal remedies are inadequate if I do not receive prompt relief. The Defendants have interfered with my business's banking relationships and have bluntly stated that they will "not cease and desist" doing so and will in fact go further and try to interfere with other relationships of my business.

Michel Neret, MD

Sworn to and subscribed before me on the 25ᵗʰ day of May, 2023.

Notary Public in and for
the State of Texas

2 of 2

# ASSET PURCHASE AGREEMENT

This Asse. Purchase Agreement (this "***Agreement***"), dated as of [ 1/29/2023 ], is entered into by and between Neret Family Practice, a Texas professional corporation ("***Seller***"), and GeneralHealth Group Inc., a Florida corporation ("***Buyer***").

## RECITALS

WHEREAS, Seller is engaged in the business of family medicine and cosmetics related services (the "***Business***");

WHEREAS, Seller wishes to sell and assign to Buyer, and Buyer wishes to purchase and assume from Seller, certain of the assets, and certain specified liabilities, of the Business, subject to the terms and conditions set forth herein; and

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I
## DEFINITIONS

The following terms have the meanings specified or referred to in this ARTICLE I:

"***Action***" means any claim, action, cause of action, demand, lawsuit, arbitration, inquiry, audit, notice of violation, proceeding, litigation, citation, summons, subpoena or investigation of any nature, civil, criminal, administrative, regulatory or otherwise, whether at law or in equity.

"***Affiliate***" of a Person means any other Person that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Person. The term "control" (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise.

"***Ancillary Documents***" means the Bill of Sale, the Assignment and Assumption Agreement, Assignment and Assumption of Contracts, the Promissory Note, the Security Agreement and any other ancillary documents contemplated hereunder.

"***Assigned Contracts***" has the meaning set forth in Section 2.01(c).

"***Assignment and Assumption Agreement***" has the meaning set forth in Section 3.02(a)(ii).

"***Assumed Liabilities***" means those Liabilities set forth in Section 1.01 of the Disclosure Schedule, all of which Buyer hereby agrees to accept and fully assume.

"***Business Day***" means any day except Saturday, Sunday or any other day on which commercial banks located in Wilmington, Delaware are authorized or required by Law to be closed for business.

"***Code***" means the Internal Revenue Code of 1986, as amended.

EXHIBIT 1

DocuSign Envelope ID: E2E6AC8F-F22F-4D89-BF90-7FBBCAF7638C

"***Contracts***" means all contracts, leases, deeds, mortgages, licenses, instruments, notes, commitments, undertakings, indentures, joint ventures and all other agreements, commitments and legally binding arrangements, whether written or oral.

"***Disclosure Schedules***" means the Disclosure Schedules delivered by Seller and Buyer concurrently with the execution and delivery of this Agreement.

"***Dollars or $***" means the lawful currency of the United States.

"***EBITDA***" shall mean earnings before interest, taxes, depreciation and amortization calculated in a manner consistent with past practice when the Business was conducted by Seller.

"***Encumbrance***" means any charge, claim, community property interest, pledge, condition, equitable interest, lien (statutory or other), option, security interest, mortgage, easement, encroachment, right of way, right of first refusal, or restriction of any kind, including any restriction on use, voting, transfer, receipt of income or exercise of any other attribute of ownership.

"***Knowledge of Seller or Seller's Knowledge***" or any other similar knowledge qualification, means the actual knowledge of any director or officer of Seller.

"***Law***" means any statute, law, ordinance, regulation, rule, code, order, constitution, treaty, common law, judgment, decree, other requirement or rule of law of any Governmental Authority.

"***Liabilities***" means liabilities, obligations or commitments of any nature whatsoever, asserted or unasserted, known or unknown, absolute or contingent, accrued or unaccrued, matured or unmatured or otherwise.

"***Permits***" means all permits, licenses, franchises, approvals, authorizations, registrations, certificates, variances and similar rights obtained, or required to be obtained, from Governmental Authorities.

"***Person***" means an individual, corporation, partnership, joint venture, limited liability company, Governmental Authority, unincorporated organization, trust, association or other entity.

"***Seller Principals***" has the meaning set forth in Section 2.08.

## ARTICLE II
## PURCHASE AND SALE

**Section 2.01    Purchase and Sale of Assets.** Subject to the terms and conditions set forth herein, at the Closing, Seller shall sell, assign, transfer, convey and deliver to Buyer, and Buyer shall purchase from Seller, free and clear of any Encumbrances other than permitted Encumbrances, all of Seller's right, title and interest in, to and under the following assets, properties and rights, which relate to, or are used or held for use in connection with, the Business (but specifically excluding the Excluded Assets as defined below (the "***Excluded Assets***")) (collectively, the "***Purchased Assets***"):

    (a)    all bank accounts;

    (b)    all inventory and supplies used in connection with the Business ("***Inventory***");

(c)     all Contracts set forth on Section 2.01(c) of the Disclosure Schedules (the "**Assigned Contracts**");

(d)     all furniture, fixtures, equipment, machinery, tools, vehicles, office equipment, supplies, computers, telephones and other tangible personal property, except for those items included in the Excluded Assets (the "**Tangible Personal Property**")

(e)     all Permits, to the extent assignable to Buyer; and

(f)     copies of all books and records, including, but not limited to, books of account, ledgers and general, financial and accounting records, machinery and equipment maintenance files, customer lists, customer purchasing histories, price lists, distribution lists, supplier lists, production data, quality control records and procedures, customer complaints and inquiry files, records and data (including all correspondence with any governmental authority), sales material and records (including pricing history, total sales, terms and conditions of sale, sales and pricing policies and practices), internal financial statements, marketing and promotional surveys, and files to the extent contained in the files turned over or otherwise provided to the Buyer during due diligence ("**Books and Records**").

**Section 2.02     Excluded Assets.** Notwithstanding the foregoing, the Purchased Assets shall not include any of the assets set forth in Section 2.02 of the Disclosure Schedule (the "**Excluded Assets**"). It is agreed by both Parties than other than the assets attached in the **Excluded Assets** list, all other Assets at 54 Flag Lake Plaza, Lake Jackson, TX and 1809 Merlin St, Bay City, TX are part of the **Purchased Assets.**

**Section 2.03     Purchase Price;** The aggregate purchase price for the Purchased Assets shall be **$7,000,000** plus the assumption of the Assumed Liabilities. The Purchase Price shall be paid as follows:

(a)     Payment Date. The purchase price shall be paid as follows: (i) 36 monthly installments with a debt service coverage ratio of 1.42 [ **(monthly EBITDA calculated), divided by 1.42 equals (the Payment to be made)**] with the first payment to be made on the 30th day following the Closing Date (the "**First Payment Date**") and each of the remaining 35 payments on thirtieth succeeding day, and (ii) remainder of agreed upon purchase price due on the third anniversary (37th month) of the First Payment Date.

(b)     Interest Rate; Interest Rates vary (from 1.5% – 5%) and must be confirmed by routine checks on a monthly basis on the IRS database

**Section 2.04     Allocation of Purchase Price.** Seller and Buyer agree that the Purchase Price and the Assumed Liabilities (plus other relevant items) shall be allocated among the Purchased Assets for all purposes (including Tax and financial accounting) as shown on the allocation schedule (the "**Allocation Schedule**") set forth on Section 2.04 of the Disclosure Schedules.

**Section 2.05     Employees.**  Effective as of the Closing Date, the Seller shall terminate the employment of all of its employees.  Buyer may make an offer of employment to the employees terminated by Seller.  With respect to employees who have accepted Buyer's offer of employment ("**Transferred Employees**"), Seller shall pay, discharge and be responsible for all liabilities and payment obligations in respect of or relating to its employees for periods ending on or before the Closing Date and

DocuSign Envelope ID: E2E6AC8F-F22F-4D89-BF90-7FBBCAF7638C

all liabilities and obligations with respect to the Transferred Employees for periods beginning on or after the Closing Date shall be liabilities and obligations of the Buyer (and not the Seller).

**Section 2.06    Post-Closing Operation of Business**.  Buyer warrants and covenants, which warranty and covenant shall survive the Closing Date so long as any amounts remain due and owing under the Promissory Note, that (a) Buyer shall use its best efforts to operate the Business in such a manner as to maximize EBITDA to repay Seller as quickly as possible, and (b) Buyer shall not take any action with a goal of shifting assets, income, activities or opportunities of the Business to other businesses or entities and shall affirmatively take those actions reasonably necessary or desirable to maximize the income of the Business.

**Section 2.07    Post-Closing Information Rights and Reports.**  At any time when any balance under the Promissory Note remains due and owing, Seller and the Seller Principals shall have full access to all of the books and records of the Buyer, including, without limitation, all financial and client information relating to the Business.

## ARTICLE III
## CLOSING

**Section 3.01    Closing.** Subject to the terms and conditions of this Agreement, the consummation of the transactions contemplated by this Agreement (the "***Closing***") shall take place by exchange of documents and signatures (or their electronic counterparts), at [ any         ] time, date or place as Seller and Buyer may mutually agree upon in writing. The date on which the Closing is to occur is herein referred to as the "***Closing Date***".

**Section 3.02    Closing Deliverables.**

(a)    At the Closing, Seller shall deliver to Buyer the following:

(i)    a bill of sale in the form of Exhibit E hereto (the "***Bill of Sale***") and duly executed by Seller, transferring the tangible personal property included in the Purchased Assets to Buyer; and

(ii)    an assignment and assumption agreement in the form of Exhibit F hereto (the "***Assignment and Assumption Agreement***") and duly executed by Seller, effecting the assignment to and assumption by Buyer of the Purchased Assets and the Assumed Liabilities;

(b)    At the Closing, Buyer shall deliver to Seller the following:

(i)    with respect to each Contract, an Assignment and Assumption of Contract duly executed by Buyer;

(ii)    the Promissory Note, duly executed by Buyer and/or the applicable parties to such agreements.

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES OF SELLER

DocuSign Envelope ID: E2E6AC8F-F22F-4D89-BF90-7FBBCAF7638C

Except as set forth in the correspondingly numbered Section of the Disclosure Schedules, Seller represents and warrants to Buyer that the statements contained in this ARTICLE IV are true and correct as of the date hereof.

**Section 4.01    Organization and Qualification of Seller.** Seller is a professional corporation duly organized, validly existing and in good standing under the Laws of the State of Texas and has full corporate power and authority to own, operate or lease the properties and assets now owned, operated or leased by it and to carry on the Business as currently conducted.

**Section 4.02    Authority of Seller.** Seller has full corporate power and authority to enter into this Agreement and the Ancillary Documents to which Seller is a party, to carry out its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby.

**Section 4.03    Undisclosed Liabilities.** Seller has no Liabilities with respect to the Business, except (a) those which are adequately reflected or reserved against in the balance sheet of the Seller previously provided to Buyer as of such balance sheet date, and (b) those which have been incurred in the ordinary course of business consistent with past practice since such balance sheet date and which are not, individually or in the aggregate, material in amount.

**Section 4.04    Title to Purchased Assets.** Seller has good and valid title to, or a valid leasehold interest in, all of the Purchased Assets. All such Purchased Assets (including leasehold interests) are free and clear of Encumbrances.

**Section 4.05    Inventory.** All Inventory, whether or not reflected in the Balance Sheet, consists of a quality and quantity usable in the ordinary course of business consistent with past practice. All Inventory is owned by Seller free and clear of all Encumbrances. The quantities of each item of Inventory are not excessive, but are reasonable in the present circumstances of Seller.

**Section 4.06    Employment Matters.** Section 4.06 of the Disclosure Schedules contains a list of all persons who are employees, independent contractors or consultants of the Business as of the date hereof, including any employee who is on a leave of absence of any nature, paid or unpaid, authorized or unauthorized.

**Section 4.07    Full Disclosure.** No representation or warranty by Seller in this Agreement and no statement contained in the Disclosure Schedules to this Agreement or any certificate or other document furnished or to be furnished to Buyer pursuant to this Agreement contains any untrue statement of a material fact, or omits to state a material fact necessary to make the statements contained therein, in light of the circumstances in which they are made, not misleading.

## ARTICLE V
## REPRESENTATIONS AND WARRANTIES OF BUYER

Except as set forth in the correspondingly numbered Section of the Disclosure Schedules, Buyer represents and warrants to Seller that the statements contained in this ARTICLE V are true and correct as of the date hereof.

**Section 5.01    Organization of Buyer.** Buyer is a corporation duly organized, validly existing and in good standing under the Laws of the State of Florida.

DocuSign Envelope ID: E2E6AC8F-F22F-4D89-BF90-7FBBCAF7638C

**Section 5.02    Authority of Buyer.** Buyer has full corporate power and authority to enter into this Agreement and the Ancillary Documents to which Buyer is a party, to carry out its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby.

**Section 5.03    Brokers.**  No broker, finder, investment banker or other person is entitled to any brokerage fee, finders' fee or other similar fee or commission, or the reimbursement of expenses, in connection with the transactions contemplated by this Agreement based upon arrangements made by or on behalf of Buyer or any of its Affiliates.

## ARTICLE VI
## ADDITIONAL AGREEMENTS

**Section 6.01    Non-Competition.** For a period of 1 year commencing on the Closing Date (the "***Restricted Period***"), Seller shall not, and shall not permit any of its Affiliates to, directly or indirectly, (i) engage in or assist others in engaging in the Restricted Business in the Territory; or (ii) have an interest in any Person that engages directly or indirectly in the Restricted Business in the Territory in any capacity, including as a partner, shareholder, member, employee, principal, agent, trustee or consultant. Notwithstanding the foregoing, Seller and its Affiliates shall not be prohibited from working with Janna Daniels and shall be permitted to work with, and provide services to, Sebastian Romero, Greyson Reynolds, and Liam Mulcahy.  For purposes of this Section, "***Restricted Business***" shall mean the provision of pediatric occupational and speech therapy services to the public, and "***Territory***" shall mean Salt Lake County, Texas.

**Section 6.02    HIPAA.**  Buyer and Seller agree to comply with the Health Insurance Portability and Accountability Act of 1996, P. L. 104-191, and its implementing rules and regulations in consummating the transactions contemplated hereunder.

**Section 6.03    Further Assurances.**  Buyer and Seller shall cooperate in good faith with the other and shall take all appropriate action and execute any documents, instruments, assignments, assumptions or conveyances of any kind which may reasonably be necessary or advisable to carry out any of the transactions contemplated hereunder.  The parties shall cooperate in providing such information as may be necessary to be in compliance with relevant sections of the Code.

**Section 6.04    Confidentiality.**  Each party shall use all information that it obtains from the other pursuant to this Agreement (the "***Confidential Information***") solely for the effectuation of the transactions contemplated by this Agreement or for other purposes consistent with the intent of this Agreement and shall not use any of such information for any other purpose, including, without limitation, the competitive detriment of the other parties.  Each party may disclose Confidential Information to its respective affiliates, counsel, accountants, tax advisors and consultants as necessary to consummate this transaction.  Additionally, the parties hereby agree that neither party shall make any announcement or press release regarding the nature or existence of this Agreement without the consent of the other party. This provision shall not prohibit the use or disclosure of Confidential Information pursuant to court order or which has otherwise become publicly available through no fault of the recipient party.

**Section 6.05    Return of Information.**  Each party agrees that upon request of the other party, it shall promptly deliver to the other party all Confidential Information that is not otherwise included in the Purchased Assets, including any copies, compilations, and extracts thereof, in such party's possession or in the possession of its agents, without retaining any copies thereof (including on hard disk, or any other electronic, magnetic, or digital medium) or certify in writing to the destruction thereof.

DocuSign Envelope ID: E2E6AC8F-F22F-4D89-BF90-7FBBCAF7638C

Notwithstanding the return or destruction of the Confidential Information, each party will continue to be bound by the terms and conditions of this Agreement unless otherwise set forth herein.


# ARTICLE VII
# MISCELLANEOUS

**Section 7.01    Notices.** All notices, requests, consents, claims, demands, waivers and other communications hereunder shall be in writing and shall be deemed to have been given (a) when delivered by hand (with written confirmation of receipt); (b) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); or (c) on the date sent by facsimile or e-mail of a PDF document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next Business Day if sent after normal business hours of the recipient. Such communications must be sent to the respective parties at the following addresses (or at such other address for a party as shall be specified in a notice given in accordance with this Section 7.01.

| | |
|---|---|
| If to Seller: | Neret Family Practice |
| | (979) 240-5238 |
| | Facsimile:        [FAX NUMBER] |
| | E-mail: michelneret@usa.net |
| | Attention:      Michel Neret |
| If to Buyer: | GeneralHealthGroup Inc |
| | 244 5th Ave, L270 |
| | New York, NY 10001 |
| | Attn:  David McNichols, Chairman |
| | **OR** |
| | Legal Team at ArentFox Schiff |

**Section 7.02    Governing Law; Venue; Enforcement.**

(a)    This Agreement shall be governed by and construed in accordance with the internal laws of the State of Texas without giving effect to any choice or conflict of law provision or rule (whether of the State of Texas or any other jurisdiction).

(b)    In the event of a dispute between the parties arising under this Agreement, the party prevailing in such dispute shall be entitled to collect such party's costs from the other party, including without limitation court costs and reasonable attorneys' fees, whether such sums are expended with or without suit, at trial or on appeal.

**Section 7.03    Expenses.** Except as otherwise expressly provided herein, all costs and expenses, including, without limitation, fees and disbursements of counsel, financial advisors and accountants, incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by the party incurring such costs and expenses, whether or not the Closing shall have occurred.

**Section 7.04    Entire Agreement; Amendments.** This Agreement and the exhibits attached hereto constitute the entire agreement between the parties hereto with respect to the subject matter contained herein, and there are no covenants, terms or conditions, express or implied, other than as set forth or referred to herein. This Agreement supersedes all prior agreements between the parties hereto

DocuSign Envelope ID: E2E6AC8F-F22F-4D89-BF90-7FBBCAF7638C

relating to all or part of the subject matter herein.  No representations, oral or written, modifying or contradicting the terms of this Agreement have been made by any party except as contained herein.  This Agreement may not be amended, modified or canceled except as provided herein or by written agreement of the parties signed by the party against whom enforcement is sought.

       **Section 7.05    Assignment.**  Without the prior written consent of the other party, the benefits of this Agreement may not be assigned or in any other manner transferred and the obligations may not be delegated.  Subject to the foregoing limitation on assignment and delegation, this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective legal representatives, successors and assigns, and no other person shall have any right, benefit or obligation hereunder.

       **Section 7.06    Counterparts.**  Any number of counterparts of this Agreement may be signed and delivered and each shall be considered an original and together they shall constitute one agreement.

*(Remainder of this page intentionally left blank; signatures begin on the next page.)*

DocuSign Envelope ID: E2E6AC8F-F22F-4D89-BF90-7FBBCAF7638C

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

**Neret Family Practice**

By _____

Name: Michel Neret

Title:   Officer

**GeneralHealth Group Inc.**

By _____

Name: Ruth Berenstein

Title:  Managing Director

DocuSign Envelope ID: E2E6AC8F-F22F-4D89-BF90-7FBBCAF7638C

ADDENDUM OF EXCLUDED EQUIPMENT

| EQUIPMENT NAME | MODEL | SERIES | PURCHASE PRICE | FUNCTION | MONTLY PAYMENT | |
|---|---|---|---|---|---|---|
| Smart Lipo Cynosure | M094E1 | RN1C4701 | $220,000.00 | Laser Liposuction | $1830.00 | |
| Sofwave | FG00001 | R21334599 | $75,000.00 | Ultrasound radio frequency Face and neck lifting | PAID OFF | |
| Haarts FUEsion X Robotic Hair transplant | Not arrived yet | Not arrived yet | $231,000.00 | FUE hair transplant | $3850.00 | |
| Vitaeris Hyperbaric Chamber | 320 | Soft shell | $23,000.00 | Hyperbaric Oxygen Chamber | PAID OFF | |
| Imac Computer 27 Inches in my office | Apple iMac 27" | | N/a | Personal computer | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| | |
|---|---|
| **From:** | Ruth Berenstein <ruth.berenstein@generalhealthgroup.com> |
| **Sent:** | Wednesday, May 24, 2023 10:00 AM |
| **To:** | Noah Meek |
| **Cc:** | Michael Neret; info@generalhealthgroup.com |
| **Subject:** | Re: [External] Cease & Desist on Behalf of Michel Neret MD |

Hi Noah,

Mark(Mordy) has been released of his duties and no longer works at GHG. You can direct all your communications to me.

I am not quite sure who you are referring to as a sham entity but perhaps doing some research on your end would help go a long way.

MG Neret was at a point of putting personal savings in to save his own practice because of his fraudulent coding tactics which was brought up to him at the beginning of this acquisition. Since the takeover, we increased the intake of the collections by more than 18% as its clear on the bank statements that we have with us. That is just **one** of the things we have done for the potential of the practice;

We are already discussing with USBank, IBC bank, and the government payer entities the fraudulent work that Michael has done over the past few years to ensure that this does not affect our integrity in any way shape or form. Thankfully we also have his forms for the past fraudulent coding work done and the letters sent by multiple entities to him to stop the work.

Unfortunately once our chairman (who was one of the originators of most of the unitedhealth programs that Dr Neret uses) called Dr Neret out on his scams and he was furious after this;

My marital name is not of your concern or Dr Neret as he was fully aware of this from the beginning (with multiple emails) what my pre-marital name was

We will not cease and desist. We demand all the money put into digital marketing work and the billing set up and work done which approximates about $15,000. We can either settle this between us or in front of an honorable judge. We are not in any way receding from this rightful transaction;

Please keep your emails free of accusations and with respect or they will not be replied to;

On Wed, May 24, 2023 at 10:51 AM Mark Cohen <mark.cohen@generalhealthgroup.com> wrote:


---------- Forwarded message ---------
From: **Noah Meek** <noah.meek@gkbklaw.com>
Date: Wed, May 24, 2023 at 10:50 AM
Subject: Cease & Desist on Behalf of Michel Neret MD
To: mark.cohen@generalhealthgroup.com <mark.cohen@generalhealthgroup.com>
Cc: info@generalhealthgroup.com <info@generalhealthgroup.com>, Michel <michelneret@usa.net>

EXHIBIT 2